### BISKIND v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. May 12, 1922.)

No. 3650.

1. **Rescue** ⊛1—**Statute prohibiting forcible rescue does not apply to one substituting for accused, who was on bail.**

Criminal Code, § 143 (Comp. St. § 10313), making it an offense to rescue and set at liberty a person convicted of an offense and ordered committed, applies only to a forcible rescue, and not to an evasion of punishment by a convicted defendant, who was on bail, by procuring another to serve his sentence for him.

2. **Indictment and information** ⊛108—**Misreference to statute violated is not fatal, if acts charged constitute offense.**

If the acts charged in the indictment are sufficient to constitute an offense under any statute of the United States, a misreference, whether in the caption of the indictment or in the body thereof, to the statute violated, does not render the indictment invalid.

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Conspiracy ⬡⟹34—Agreement to substitute another for defendant sentenced to workhouse is criminal conspiracy.**

An agreement whereby one of the defendants, who had been sentenced to the workhouse for a violation of an act of Congress, and who was at liberty on bail, agreed to pay another defendant a fixed sum of money to surrender himself at the workhouse and serve the sentence, the convicted defendant meanwhile remaining in hiding, was a conspiracy to commit an offense against the United States, either by violation of Criminal Code, § 141 (Comp. St. § 10311), making it an offense to conceal a person against whom process has been issued, or certainly against Judicial Code, § 268 (Comp. St. § 1245), making it a contempt criminally punishable to disobey or resist the lawful process of the United States court.

**4. Conspiracy ⬡⟹28—Object need not be act made punishable criminally.**

In order for a conspiracy to be punishable under Criminal Code, § 37 (Comp. St. § 10201), as one to commit an offense against the United States, it is not necessary that the act the conspiracy intended to effect was itself made punishable by criminal prosecution.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Manuel Biskind and another were convicted of conspiracy to commit an offense against the United States, and defendant Biskind brings error. Affirmed.

L. W. Wickham, of Cleveland, Ohio (Reed, Meals, Orgill & Maschke, of Cleveland, Ohio, on the brief), for plaintiff in error.

Joseph C. Breitenstein, Asst. U. S. Atty., of Cleveland, Ohio (E. S. Wertz, U. S. Atty., of Cleveland, Ohio, on the brief), for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff in error, together with one Meyer and one Beattie, was indicted upon a charge of conspiracy under section 37 of the Criminal Code (Comp. St. § 10201) to commit an offense against the United States, the charge being in substance this:

Meyer had been convicted in the court below of a criminal offense, and had thereupon been sentenced to imprisonment in the Warrensville workhouse. The three conspirators agreed that Meyer and plaintiff in error should pay a certain sum of money to Beattie, in consideration of which the latter would pretend to be Meyer, and under that name and character present himself to and get himself accepted by the workhouse officials as Meyer, and so serve Meyer's sentence; that during such service Meyer should absent himself from Cleveland and remain in hiding; that after the sentence had been served he should return to Cleveland, and with the co-operation of plaintiff in error further compensate Beattie for so serving the sentence. The overt acts charged were that Meyer made the agreed initial payment, and that Beattie presented himself to the workhouse officials as Meyer, procured himself to be so accepted, and accordingly served a portion of Meyer's sentence. Beattie pleaded guilty. Plaintiff in error demurred to the indictment as not stating an offense against the laws of the United States. The demurrer was overruled, plea of not guilty was entered by plaintiff in error and Meyer, and trial had. The facts charged by the gov-

---

ernment were admitted. It also appeared that when the agreement in question was made Meyer was at large upon bail, conditioned for his surrender into custody at a fixed date to begin his sentence, and that when the day for such surrender arrived the commitment papers directing such confinement had been delivered to the workhouse authorities and were awaiting Meyer's arrival. A motion to direct verdict on the ground that the facts did not constitute a violation of the statute was overruled, the cause submitted to the jury, and verdict of conviction rendered.

[1, 2] The sole question presented relates to the legal sufficiency of the indictment and proofs. The indictment charges a conspiracy to commit "an offense against the United States; that is to say, to violate section 143 of the United States Criminal Code (section 10313) by rescuing and setting at liberty a person convicted of an offense and ordered committed," etc. We agree with the contention that section 143 does not apply to the facts set out in the indictment, because that section punishes only a forcible rescue, which the stated facts negative. In our opinion, however, the misreference to that section does not invalidate the indictment. It is well settled that a reference to the section relied upon by the pleader, contained in either the caption or the margin of an indictment, does not limit the prosecution to proof of a case under such statute. Williams v. United States, 168 U. S. 382, 389, 18 Sup. Ct. 92, 42 L. Ed. 509; United States v. Nixon, 235 U. S. 231, 235, 35 Sup. Ct. 49, 59 L. Ed. 207. In those cases it was said that the caption or margin constitutes no part of the indictment, and neither adds to nor weakens the legal force of its averments, while in the instant case the reference to the statute is in the body of the indictment; but in our opinion the case before us is within the reason of the rule announced in the Williams and Nixon Cases. In the former, it is said to be "wholly immaterial what statute was in the mind of the district attorney when he drew the indictment, if the charges made are embraced by some statute in force," and, again:

"We must look to the indictment itself, and if it properly charges an offense under the laws of the United States, that is sufficient to sustain it, although the representative of the United States may have supposed that the offense charged was covered by a different statute."

And in the Nixon Case it is said:

"What was that statute, and on what statute the indictment was founded, was to be determined as a matter of law from the facts therein charged."

The notice afforded to defendant would be no less, nor his confusion greater, because the reference to the statute is in the body rather than in the caption or margin of the indictment. In either case the reference to the statute indicates merely what the pleader thought was the applicable statute. Our conclusion is not wholly unfortified by authority. In Sugar v. United States, 252 Fed. 79, 84, 164 C. C. A. 191, this court held that the unnecessary (and possibly confusing) naming of section 5 of the Selective Service Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 2044e) as the legislation involved, when in fact the offense charged must, in connection with conspiracy section 37, have its basis,

281 F.—4

not only in section 5, but also in section 6 of the act (Comp. St. § 2044f), did not invalidate the indictment, which was held to be—

"based on those provisions of the act, the language of which covers the offense charged, whether that language is found in section 5 or elsewhere; the act, and not the mere numbered sections of it, being the substantial thing to be regarded, and particularly, when the language of the indictment clearly points out what conduct is aimed at and sought to be punished." Certiorari denied, 248 U. S. 578, 39 Sup. Ct. 19, 63 L. Ed. 429.

In Vedin v. United States (C. C. A. 9) 257 Fed. 550, 551, 168 C. C. A. 534, 535, it was held that "the statute on which an indictment is found is determinable, as a matter of law, from the facts charged, and they may bring the offense charged within an existing statute, although the same is not mentioned, and the indictment is brought under another statute," [1] citing the Williams, Nixon, and other cases (certiorari denied, 250 U. S. 663, 40 Sup. Ct. 11, 63 L. Ed. 1196). See, also, Guiney v. Bonham (C. C. A.) 261 Fed. 582, 584, 8 A. L. R. 1282. Moreover, in the instant case the conspiracy is the substantive charge.

[3] We are thus brought to the question whether the indictment charges a conspiracy to commit an offense against the United States. We think this question must be answered in the affirmative. The district judge did not identify in his charge the statute whose violation was the subject of the conspiracy. The government relies not only upon section 141 of the Criminal Code (section 10311), which punishes (among other things) the concealing of "any person for whose arrest a warrant or process has been so issued, so as to prevent his discovery and arrest," etc. (thus not involving either technical rescue or force), but also upon section 268 of the Judicial Code (Comp. St. § 1245), which empowers the courts "to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority." We are disposed to think section 141 applicable, having in mind that a commitment for Meyer's imprisonment was already in the hands of the workhouse authorities as process for his detention (which involved a precedent taking into custody thereunder), that he was under bond to so subject himself, and that the conspiracy involved an actual concealment of Meyer, to wit, his departure from Cleveland and his remaining in hiding until Beattie should have suffered the substituted imprisonment. But regardless of this statute, we think the case clearly within section 268 of the Judicial Code already cited, which expressly includes within contempts made criminally punishable "the disobedience or resistance * * * by any party * * * to any lawful * * * process * * * or command of the said courts."

Willful and intentional disobedience of the order of a court of competent jurisdiction (even though made in a civil cause) is criminally punishable, so far as the proceeding is in vindication of the authority of the court. Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874; Bessette v. W. B. Conkey Co., 194 U. S. 324, 24 Sup. Ct. 665, 48 L. Ed. 997; Proudfit Co. v. Kalamazoo Co. (C. C. A. 6) 230 Fed. 120, 132, 144 C.

---

[1] The opinion states that "the indictment in each count charged violation of" the statute referred to in the above quotation as "another statute."

C. A. 418, and cases there cited. In Brown v. Trust Co., 193 Fed. 622, 113 C. C. A. 490, we sustained a finding of criminal contempt for failure to comply with an order of a referee in bankruptcy requiring the surrender of certain rooms in a hotel to the trustee in bankruptcy of the hotel company. In Swepston v. United States, 251 Fed. 205, 208, 163 C. C. A. 361, we affirmed an order adjudging guilty of contempt of court a state sheriff, who was custodian of the county jail, and a deputy sheriff, who was keeper thereof, in conspiring for and in conniving and assisting a federal prisoner therein to escape from jail and to be at large and beyond the confines thereof. Direct analogy between that case and the instant case is not lacking. The object of the conspiracy in the instant case was to effect a disobedience by Meyer of the process of commitment issued by a federal court, and so prevent the carrying out of that process and the order on which it was issued.

[4] True, section 268 is contained in the Judicial Code, and not in the Criminal Code. But the lack of specific provision for criminal prosecution therefor is not important here, where the prosecution is for conspiracy, not for the contempt; for "a conspiracy to commit any offense which by act of Congress is prohibited in the interest of the public policy of the United States, although not of itself made punishable by criminal prosecution * * * is a conspiracy to commit an 'offense against the United States' within the meaning of section 37" of the Criminal Code. United States v. Hutto, 256 U. S. 524, 528, 529, 41 Sup. Ct. 541, 65 L. Ed. 1073. Whether or not a contempt of the authority of a federal court in a civil case would be subject to criminal prosecution, there is no room for doubt that a conspiracy, such as here shown, to effect a contemptuous disobedience or resistance to the lawful process of a federal court in a criminal cause, is a conspiracy to commit an offense against the United States.

The judgment of the District Court is affirmed.